UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

KELLY IRISH

                                        Plaintiff,

            -against-

FLUSHING MEDICAL ARTS BUILDING INC., RADNET,
INC., RADNET MANAGEMENT, INC., LENOX HILL
RADIOLOGY AND MEDICAL IMAGING ASSOCIATES,
P.C., AND AND MID ROCKLAND IMAGING PARTNERS,
INC.

                                        Defendants.

------------------------------------------------------------------------x

Docket: 1:22-cv-00958 (WFK)
(JRC)

**AMENDED COMPLAINT**

**JURY TRIAL REQUESTED**

## **AMENDED COMPLAINT**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, plaintiff Kelly Irish (hereafter referred to as "Plaintiff"), by counsel, Parker Hanski LLC, as and for the Amended Complaint in this action against defendants Flushing Medical Arts Building Inc., Radnet, Inc., RadNet Management, Inc., Lenox Hill Radiology and Medical Imaging Associates, P.C., and and Mid Rockland Imaging Partners, Inc. (together referred to as "Defendants"), hereby alleges as follows:

## **NATURE OF THE CLAIMS**

1.        This lawsuit opposes pervasive, ongoing, and inexcusable disability discrimination by the Defendants.  In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses to redress Defendants' unlawful disability discrimination against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations, Section 504 of the Rehabilitation Act ("Section 504") 29

1

U.S.C. § 794, *et. seq.,* the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive Law"), the New York State Civil Rights Law, § 40 *et. seq.*, and the New York City Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New York ("Administrative Code"). A private right of action is conferred by 42 U.S.C. § 18116 for plaintiff to enforce the non-discrimination provisions of the Patient and Protection Affordable Care Act (ACA), 42 U.S.C. § 18116 ("Section 1557 of the Affordable Care Act"). As explained more fully below, Defendants own, lease, lease to, operate, and control a place of public accommodation that violates the above-mentioned laws. Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.      Full and equal access to medical care and treatment is critical for persons with disabilities such as Plaintiff. Yet despite its history of providing dental/medical care, Defendants have and continue to fail to provide persons with disabilities, including Plaintiff, the same quality of care as provided to non-disabled patients, all because of Plaintiff's disabilities.

3.      This unequal treatment to the disabled, including Plaintiff, occurs because, among other things: clinicians and support staff are not provided the proper training and support on interacting with and caring for persons with disabilities; adaptable, accessible equipment is not available; failure to provide assistance with transferring patients and/or failure to provide safe assistance with transferring patients; and patients using wheelchairs are not provided with an accessible examination room. Because of the lack of attention to her needs, Plaintiff is afraid for her personal safety and feels frustrated,

humiliated, and angry that she is not receiving the same services as provided to the non-disabled.

4.      Defendants have failed to implement comprehensive policies, practices, and procedures to make its facilities and services accessible to Plaintiff.

5.      Defendants' failure to meet it legal obligations and remove barriers at its facility has resulted in a two-tiered system of health care that relegates people with disabilities to substandard and inferior treatment.

6.      This ongoing pattern of systemic discrimination denies Plaintiff and other similarly disabled persons of their rights under federal, and state statutes, including the "full and equal enjoyment" guarantee of Title III of the Americans with Disabilities Act; and the "program access" requirement under Section 504 of the Rehabilitation Act.

7.      Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use its place of public accommodation all because Plaintiff is disabled.
See http://www.ada.gov/medcare_mobility_ta/medcare_ta.htm. for the Department of Justice publication entitled "Access To Medical Care For Individuals With Mobility Disabilities".

8.      The day has come for defendant to accept responsibility.  This action seeks to right that wrong via recompensing Plaintiff and making Defendants' place of public accommodation and facility fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendants provides to non-disabled patients.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. §

12188, 29 U.S.C. § 794, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA, Section 1557 of the Affordable Care Act, and Section 504 of the Rehabilitation Act.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

11.     At all times relevant to this action, Plaintiff Kelly Irish has been and remains currently a resident of the State and City of New York.

12.     At all times relevant to this action, Plaintiff Kelly Irish has been and remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

13.     Defendant Flushing Medical Arts Building Inc. owns the property located at 43-55 147th Street in Queens County, New York (hereinafter referred to as "43-55 147th Street").

14.     At all relevant times, defendants Radnet, Inc., RadNet Management, Inc., Lenox Hill Radiology and Medical Imaging Associates, P.C., and Mid Rockland Imaging Partners, Inc. operate and/or lease property located at 43-55 147th Street from the defendant Flushing Medical Arts Building Inc. (hereinafter referred to as the "Lenox Hill Radiology" premises).

4

15.     Upon information and belief, Flushing Medical Arts Building Inc. and Radnet, Inc., RadNet Management, Inc., Lenox Hill Radiology and Medical Imaging Associates, P.C. and Mid Rockland Imaging Partners, Inc. have a written lease agreement.

16.     Each defendant is licensed to and does business in New York State.

17.     Upon information and belief, Defendants Radnet, Inc., RadNet Management, Inc., Lenox Hill Radiology and Medical Imaging Associates, P.C. and Mid Rockland Imaging Partners, Inc. are related companies under common control.

18.     Radnet, Inc. is a publicly traded company.

19.     Radnet, Inc. is owned by non-physicians.

20.     RadNet Management, Inc. is a subsidiary of Radnet, Inc.

21.     In 2012, Radnet, Inc. acquired Lenox Hill Radiology and Medical Imaging Associates, P.C. for $30.3 million.

22.     Radnet, Inc. owns Lenox Hill Radiology and Medical Imaging Associates, P.C.

23.     Radnet, Inc. owns a controlling financial interest in Lenox Hill Radiology and Medical Imaging Associates, P.C.

24.     RadNet Management, Inc. has an ownership interest in Lenox Hill Radiology and Medical Imaging Associates, P.C.

25.     RadNet Management, Inc. has represented itself to the New York State Department of Health as the owner of Lenox Hill Radiology and Medical Imaging Associates, P.C.

26.     Radnet, Inc. controls the operations of Lenox Hill Radiology and

Medical Imaging Associates, P.C.

27.     Radnet, Inc. pays the employees of Lenox Hill Radiology and Medical Imaging Associates, P.C.

28.     Radnet, Inc. provides employees to work for Lenox Hill Radiology and Medical Imaging Associates, P.C.

29.     Radnet, Inc. controls the finances of Lenox Hill Radiology and Medical Imaging Associates, P.C.

30.     Radnet, Inc. controls the commercial checking account of Lenox Hill Radiology and Medical Imaging Associates, P.C.

31.     Funds from Lenox Hill Radiology and Medical Imaging Associates, P.C. Radnet, Inc.'s deposits are transferred to an account owned by Radnet, Inc.

32.     In or around 2020, Defendants received loans from the Small Business Administration (SBA) through the congressionally-created "Paycheck Protection Program," also known as a "PPP loan."

33.     In April 2020, Lenox Hill Radiology and Medical Imaging Associates, P.C.  received $2,229,150 from the PPP loan.

34.     Upon information and belief, these aforementioned loan(s) have not yet been paid back in full.

35.     Page 4 of the SBA application to receive a PPP loan states that "All businesses receiving SBA financial assistance must agree not to discriminate in any business practice … on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations."

36.      SBA regulations prohibit loan recipients from discriminating "with

regard to goods, services, or accommodations offered or provided by the aided business or other enterprise, whether or not operated for profit, because of race, color, religion, sex, handicap, or national origin of a person, or fail or refuse to accept a person on a nonsegregated basis as a patient, student, visitor, guest, customer, passenger, or patron." 13 CFR § 113.3(a).

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

37.     Each of the Defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, the Lenox Hill Radiology premises located at 43-55 147th Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)).

38.     The Lenox Hill Radiology premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity as a medical practice, and its operations affect commerce.

39.     Numerous architectural barriers exist at the Lenox Hill Radiology premises that prevent and/or restrict access to Plaintiff, a person with a disability, which include, but are not limited to, architectural barriers at the paths of travel.

40.     Upon information and belief, at some time after January 1992, alterations were made to 43-55 147th Street, including areas adjacent and/or attached to 43-55 147th Street.

7

41.     Upon information and belief, at some time after 2016, alterations were made to the Lenox Hill Radiology premises, and to areas of 43-55 147th Street related to the Lenox Hill Radiology premises.

42.     Within the past three years of filing this action, Plaintiff visited and attempted to and desired to access the Lenox Hill Radiology premises.

43.     The services, features, elements and spaces of the Lenox Hill Radiology premises are not readily accessible to, or usable by Plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design (hereinafter referred to as the "2010 Standards" or the "2010 ADA")

44.     Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and complete access to all of the areas of the Lenox Hill Radiology premises that are open and available to the public.

45.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the Uniform Federal Accessibility Standards ("UFAS"), the 1968 New York City Construction Code ("1968 New York City"), and the 2014 New York City Construction Code ("2014 New York City").

8

46.     Barriers to access that Plaintiff experienced, encountered and/or which

deter Plaintiff from patronizing the Lenox Hill Radiology premises as well as

architectural barriers that exist include, but are not limited to, the following:

**Site Arrival:**

I.      An accessible route is not provided from the public street and sidewalk to the
        building entrance.
        Defendants fail to provide that at least one accessible route shall be provided
        within the site from public streets and sidewalks to the accessible building or
        facility entrance they serve. See 1991 ADA 4.1.2(1), 2010 ADA 206.2.1, 1968
        NYC 27-292.5(b), and 2014 NYC 1104.1.

II.     The ramp between the sidewalk and the 147th Street entrance doorway has
        slopes in excess of 1:12.
        Defendants fail to provide that ramps shall have a running slope not steeper
        than 1:12. See 1991 ADA 4.8.2, 2010 ADA 405.2, 1968 NYC 4.8.2, 2014
        NYC 405.2

III.    The ramp between the sidewalk and the 147th Street entrance doorway lacks
        bottom handrails extensions.
        Defendants fail to provide handrail extensions at accessible ramps. See 1991
        ADA 4.8.5(2), 2010 ADA 505.10, 1968 NYC 4.8.5(2), and 2014 NYC
        505.10.

IV.     An accessible route is not provided from the attempted accessible parking
        space to the Elm Street entrance door. See below.
        Defendants fail to provide that at least one accessible route shall be provided
        within the site from accessible parking spaces and accessible passenger
        loading zones to the accessible building or facility entrance they serve. See
        1991 ADA 4.1.2(1), 2010 ADA 206.2.1, 1968 NYC 27-292.5(b), and 2014
        NYC 1104.1.

V.      The route across the drive aisle from the attempted accessible parking space to
        the Elm Street entrance door has cross slopes in excess of 1:48.
        Defendants fail to provide that the cross slope of walking surfaces at
        accessible routes shall not be steeper than 1:50. See 1991 ADA 4.3.7 and 1968
        NYC 4.3.7.
        Defendants fail to provide that the cross slope of walking surfaces at
        accessible routes shall not be steeper than 1:48. See 2010 ADA 403.3 and
        2014 NYC 403.3

VI.     There are steps from the attempted accessible parking space to the Elm Street entrance door.
        Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a curb ramp, ramp, elevator, or platform lift. See 1991 ADA 4.3.8 and 1968 NYC 4.3.8.
        Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. See 2010 ADA 303.4and 2014 NYC 303.4.

VII.    The steps from the attempted accessible parking space to the Elm Street entrance door lack handrails on both sides of the steps.
        Defendants fail to provide that stairs shall have handrails on both sides of the steps. See 1991 ADA 4.9.4(1), 2010 ADA 504.6, 1968 NYC 4.9.4(1), 2014 NYC 504.6.

VIII.   The steps from the attempted accessible parking space to the Elm Street entrance door lack bottom handrail extensions.
        Defendants fail to provide that stairs shall have handrails on both sides of the steps. See 1991 ADA 4.9.4(2), 2010 ADA 504.6, 1968 NYC 4.9.4(2), 2014 NYC 504.6.

**Parking:**

IX.     The attempted accessible parking space in the parking lot is not accessible.
        Defendants fail to provide that where parking spaces are provided, accessible parking spaces shall be provided. See 21991 ADA 4.1.2(5)(a), 2010 ADA 208.1, 1968 NYC 27-292.19(a), and 2014 NYC 1106.1.

X.      The attempted accessible parking space in the parking lot is not accessible.
        Defendants fail to provide that the number of accessible parking spaces shall be in accordance with 1991 ADA 4.1.2(5)(a) and 2010 ADA Table 208.2.
        Defendants fail to provide that where parking spaces are provided, five percent of the total number of parking spaces, but not less than one parking space, shall be accessible parking spaces. See 1968 NYC 27-292.19(a) and 2014 NYC 1106.1.

XI.     Van accessible parking spaces are not provided in the parking lot.
        Defendants fail to provide that for every eight or fraction of eight accessible parking spaces required, at least one shall be a van accessible parking space. See 1991 ADA 4.1.2(5)(b).
        Defendants fail to provide that parking facilities containing less than 30 parking spaces shall have at least one van accessible parking space ("high clearances accessible parking space") OR parking facilities containing more than 30 parking spaces shall have at least two van accessible parking space ("high clearances accessible parking space"). See 1968 NYC 4.6.2.

10

Defendants fail to provide that for every six or fraction of six accessible parking spaces required, at least one shall be a van accessible parking space. See 2010 ADA 208.2.4 and 2014 NYC 1106.5.

XII.      The attempted accessible parking space in the parking lot is located across the drive aisle form the Elm Street entrance door. It is also not on the shortest route to the 147th Street entrance doorway.
Defendants fail to provide that accessible parking spaces that serve a particular building or facility shall be located on the shortest accessible route from parking to an accessible entrance. See 1991 ADA 4.6.2, 2010 ADA 208.3.1, 1996 NYC 4.6.1, and 2014 NYC 1106.6.

XIII.     The attempted accessible parking space in the parking lot is located across the drive aisle form the Elm Street entrance door. It is also not on the shortest route to the 147th Street entrance doorway.
Defendants fail to provide that where parking serves more than one accessible entrance, accessible parking spaces shall be dispersed and located on the shortest accessible route to the accessible entrances. See 1991 ADA 4.6.2, 2010 ADA 208.3.1, 1996 NYC 4.6.1, and 2014 NYC 1106.6.

XIV.      The attempted accessible parking space in the parking lot is less than 132 inches wide.
Defendants fail to provide that van accessible parking spaces shall be 132 inches wide minimum. See 1991 ADA 4.6.3, 2010 ADA 502.2, 1968 NYC 6.6.2, and 2014 NYC 502.2.

XV.       The attempted accessible parking space in the parking lot lacks an access aisle.
Defendants fail to provide that access aisles shall adjoin an accessible route. See 1991 ADA 4.6.3, 2010 ADA 502.3, 1968 NYC 4.6.2, and 2014 NYC 502.4.1.

XVI.      The attempted accessible parking space in the parking lot lacks an access aisle.
Defendants fail to provide that access aisles serving accessible parking spaces shall be 60 inches wide minimum. See 1991 ADA 4.1.2(5)(a) and 4.6.3, 2010 ADA 502.3.1, 1968 NYC 4.6.2, and 2014 NYC 502.4.2.
Defendants fail to provide that access aisles serving van accessible parking spaces shall be 96 inches wide minimum. See 1991 ADA 4.1.2(5)(b) and 4.6.3, 2010 ADA 502.2, 1968 NYC 4.6.2, and 2014 NYC 502.2.

XVII.     The attempted accessible parking space in the parking lot lacks an access aisle.
Defendants fail to provide that access aisles serving car and van accessible parking spaces shall extends the full length of the parking spaces they serve.

See 1991 ADA 4.6.3, 2010 ADA 502.3.2,1968 NYC 4.6.2, and 2014 NYC 502.4.3.

XVIII.      The attempted accessible parking space in the parking lot lacks an access aisle.
Defendants fail to provide that that access aisles serving car and van accessible parking spaces shall be marked to discourage parking in them.  See 2010 ADA 502.3.3 and 2014 NYC 502.4.4.

XIX.      The attempted accessible parking space in the parking lot lacks an access aisle.
Defendants fail to provide that accessible parking spaces and access aisles serving them shall be at the same level. See 2010 ADA 502.4 and 2014 NYC 502.5.

XX.      The attempted accessible parking space in the parking lot has slopes in excess of 1:48
Defendants fail to provide that accessible parking spaces and access aisles serving them shall have ground surfaces with slopes not steeper than 1:50. See 1991 ADA 4.6.3.
Defendants fail to provide that accessible parking spaces and access aisles serving them shall have ground surfaces with slopes not steeper than 1:48. See 2010 ADA 502.4 and 2014 NYC 502.5.

XXI.      Van accessible parking spaces are not provided in the parking lot.
Defendants fail to provide that signs identifying van accessible parking spaces shall contain the designation "van accessible". See 1991 ADA 4.6.4, 2010 ADA 502.6, and 2020 NYS 502.7.

XXII.      The attempted accessible parking space in the parking lot lacks an access aisle.
Defendants fail to provide that accessible parking spaces and access aisles shall be designed so that cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes.  See 1991 ADA 4.6.3, 2010 ADA 502.7, 1968 NYC 4.6.2, and 2014 NYC 502.8.

**Entrances:**

XXIII.      None of the entrances are accessible.
Defendants fail to provide that at least 50% of all its public entrances are accessible.  See 1991 ADA 4.1.3.8(a)(i).
Defendants fail to provide that at least 60% of all its public entrances are accessible.  See 2010 ADA 206.4.1.
Defendants fail to provide that primary entrances are accessible. See 1968 NYC 27-292.5(a).

12

Defendants fail to provide that all of its public entrances are accessible. See 2014 NYC 1105.1

XXIV.   Maneuvering clearances for pulling open the Elm Street entrance door is not provided.
Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 60 inches perpendicular to the door for 18 inches parallel to the door beyond the latch is required for a forward approach to the pull side of a door, or 54 inches perpendicular to the door for 24 inches parallel to the door beyond the latch is required for a latch approach to the pull side of a door. See 1991 ADA 4.13.6, 2010 ADA 404.2.4, 1968 NYC 4.13.6, and 2014 NYC 404.2.3.

XXV.    Maneuvering clearances for pushing open the Elm Street entrance door is not provided.
Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 48 inches perpendicular to the door is required for a forward approach to the push side of a door. See 1991 ADA 4.13.6, 2010 ADA 404.2.4, 1968 NYC 4.13.6, and 2014 NYC 404.2.3.

XXVI.   The Elm Street entrance door is heavy and difficult to open.
Defendants fail to provide a door that requires less than eight-and-one-half pounds of force to open.  Any door so heavy that it prevents entrance by people with disabilities may deny them access to goods and services, which is covered under the ADA. See 1991 ADA 4.1.1(1) and 2010 ADA 201.1.

XXVII.  There are steps just beyond the Elm Street entrance door.
Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a curb ramp, ramp, elevator, or platform lift. See 1991 ADA 4.3.8 and 1968 NYC 4.3.8.
Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. See 2010 ADA 303.4 and 2014 NYC 303.4.

XXVIII. Maneuvering clearances for pulling open the 147th Street entrance doorway is not provided.
Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 60 inches perpendicular to the door for 18 inches parallel to the door beyond the latch is required for a forward approach to the pull side of a door, or 54 inches perpendicular to the door for 24 inches parallel to the door beyond the latch is required for a latch approach to the pull side of a door. See 1991 ADA 4.13.6, 2010 ADA 404.2.4, 1968 NYC 4.13.6, and 2014 NYC 404.2.3.

XXIX.        The chair lift at the steps just beyond the 147th Street entrance doorway does
             not provide unassisted entry, operation, or exit.
             Defendants fail to provide an accessible platform lift that facilitates
             unassisted entry, operation, and exit. See 1991 ADA 4.11.3, 2010 ADA
             410.1, 1968 ADA 4.11.3, and 2014 NYC 410.1.

XXX.         There are steps just beyond the 147th Street entrance door. A chair lift is
             provided; however, a chair lift is not an acceptable form of an accessible route
             to overcome the changes in level.
             Defendants fail to provide that changes in level at accessible routes greater
             than 1/2-inch-high shall be overcome with a curb ramp, ramp, elevator, or
             platform lift. See 1991 ADA 4.3.8 and 1968 NYC 4.3.8.
             Defendants fail to provide that changes in level at accessible routes greater
             than 1/2-inch-high shall be ramped. See 2010 ADA 303.4 and 2014 NYC
             303.4.

**Service Counter**

XXXI.        The service (check-in) counter is not accessible. See below.
             Defendants fail to provide that, where provided, at least one of each type of
             sales counter and service counter shall be accessible.  See 1991 ADA 7.2,
             2010 ADA 227.3, 1968 NYC 27-292.1, and 2014 NYC 1109.123.

XXXII.       The service (check-in) counter is not accessible. See below.
             Defendants fail to provide that where sales counters and service counters or
             dispersed throughout the building or facility, accessible sales counters and
             service counters also shall be dispersed. See 1991 ADA 7.2, 2010 ADA 227.3,
             1968 NYC 27-292.1, and 2014 NYC 1109.123.

XXXIII.      The service (check-in) counter is not on an accessible route as described
             above.
             Defendants fail to provide that all accessible sales counters and service
             counters shall be on an accessible route. See 1991 ADA 7.2, 2010 ADA
             206.2.4, 1968 NYC 27-292.5(c), 2014 NYC 1104.3.

XXXIV.       The service (check-in) counter does not have an accessible portion of
             countertop that extends the same depth as the general countertop.
             Defendants fail to provide that the accessible portion of the sales countertop or
             service countertop shall extend the same depth as the general sales counter top
             or service counter top.  See 2010 ADA 904.4 and 2014 NYC 904.3.

XXXV.        The service (check-in) counter is more than 36 inches high.
             Defendants fail to provide that an accessible portion of the (sales or service)
             counter surface is 36 inches long minimum and 36 inches high maximum
             above the finish floor and shall be provided when a clear floor or ground

14

space is positioned for a parallel approach adjacent to the accessible portion of the counter. See 1991 ADA 7.2, 2010 ADA 904.4.1, 1968 NYC 27-292.1, and 2014 NYC 904.3.1.

Defendants fail to provide that an accessible portion of the (sales or service) counter surface is 30 inches long minimum and 36 inches high maximum above the finish floor and shall be provided when knee and toe space is provided under the counter for a clear floor or ground space positioned for a forward approach to the accessible portion of the counter. See 1991 ADA 7.2, 2010 ADA 904.4.2, 1968 NYC 27-292.1, and 2014 NYC 904.3.2.

47.     Defendants unlawfully provide a stairway chairlift to overcome interior steps.  A stairway chairlift is a lift with just a chair and no platform to roll onto.  Instead, a wheelchair user must transfer from their wheelchair into a separate chair that travels over steps from one level to another thereby leaving their wheelchair behind at the other level.

48.     Upon information and belief, a full inspection of the Lenox Hill Radiology premises will reveal the existence of other barriers to access.

49.     As required by the ADA (remedial civil rights legislation) to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Lenox Hill Radiology premises in order to catalogue and cure all of the areas of non-compliance with the ADA.  Notice is therefore given that Plaintiff intends on amending the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

50.     Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

51.     Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws.

Nor have Defendants made or provided accommodations or modifications to persons with disabilities.

52.     Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within the Lenox Hill Radiology premises continue to exist and deter Plaintiff.

53.     Plaintiff frequently travels to the area where the Lenox Hill Radiology premises is located.

54.     Plaintiff intends to patronize the Lenox Hill Radiology premises several times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

55.     Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether the Lenox Hill Radiology premises is fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

56.     Plaintiff intends to patronize the Lenox Hill Radiology premises several times a year as "tester" to monitor, ensure, and determine whether the Lenox Hill Radiology premises is fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

57.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

58.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

59.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

60.     Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement).  28 C.F.R. 36.201(b).

61.     Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled.  Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

62.     By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

63.     Defendants have discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

64.     The Lenox Hill Radiology premises are not fully accessible and fail to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

65.     Defendants failed to make alteration accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2).

66.     The paths of travel to the altered primary function areas accessible were not made accessible in violation of 28 C.F.R. § 36.403.

67.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make Defendants' place of public accommodation fully accessible.

68.     By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

69.     In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

70.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

71.     Defendants have and continue to discriminate against Plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE SECTION 504 OF THE REHABILITATION ACT)

72.     Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

73.     Plaintiff is an individual with a disability as defined by the Rehabilitation Act, 29 U.S.C. § 705(20).

74.     Section 504 of the Rehabilitation Act of 1973 (hereinafter also referred to as "Section 504"), 29 U.S.C. § 794, and the regulations promulgated thereunder, prohibit discrimination against people with disabilities by recipients of federal funding. Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

75.     Section 504 defines "program or activity" in part as "an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing . . . health care." 29 U.S.C. § 794(b)(3)(A)(ii).

76.     Defendants have received federal financial assistance at all relevant times including, but not limited to, the PPP loan(s).

77.     Defendants have and continue to commit discrimination during the time when the PPP is or was outstanding.

78.     Through the acts and omissions alleged herein, Defendants have, solely because of Plaintiff's disabilities, excluded plaintiff from participation in defendants' programs and activities and denied Plaintiff the benefits of Defendants' programs and

19

activities, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794, *et. seq.* and the regulations promulgated thereunder.

79.     Defendants' acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder and have resulted in injury to plaintiff.

80.     The services, features, elements, and spaces of Defendants' facility are not readily accessible to, or usable by Plaintiff as required by the Section 504 of the Rehabilitation Act as it was not designed, constructed, or altered in conformance with the Uniform Federal Accessibility Standards ("UFAS").

81.     Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to UFAS, Plaintiff was and has been denied the benefits of Defendants' facility.

82.     Defendants acted with deliberate indifference to Plaintiff's rights guaranteed under Section 504.

83.     Defendants have had actual knowledge of the discrimination due to, among other things, the open and obvious nature of the discriminatory condition and deliberately decided not to address the discrimination and institute corrective measures.

84.     As a proximate result of Defendants' violations of Section 504, Plaintiff has been injured and continues to be injured, as set forth herein in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF THE PATIENT PROTECTION &**
**AFFORDABLE CARE ACT, SECTION 1557, 42 U.S.C. § 18116)**

85.     The regulations implementing Section 1557, the non-discrimination provision of the Patient Protection and Affordable Care Act (ACA), went into effect on July 18, 2016.

86.     Section 1557 prohibits discrimination because of race, color, national origin, sex, age or disability in certain health programs and activities.

87.     Section 1557's definition of prohibited discrimination relies in part on Section 504 of the Rehabilitation Act. An individual shall not, on the ground prohibited under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance. Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C.A. § 18116(a). The rule itself states that "[t]he enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, or the Age Discrimination Act of 1975 shall apply for purposes of Section 1557 as implemented by this part." 45 C.F.R. § 92.301.

88.     The implementing regulations broadly define Federal financial assistance as "any grant, loan, credit, subsidy . . . or any other arrangement by which the Federal government provides or otherwise makes available assistance, including assistance provided by means of tax credits, subsidies, or payments given to individuals to purchase insurance from any entity providing health-related insurance coverage." See 45 C.F.R. § 92.4.

89.     The implementing regulations state the following: "For an entity principally engaged in providing or administering health services or health insurance coverage or other health coverage, all of its operations are considered part of the health program or activity." 45 C.F.R. § 92.4.

90.     Upon information and belief, Defendants receive Federal financial assistance through its participation in the Medicare Part D prescription insurance program, and other Medicare insurance programs.

91.     The nondiscrimination provision of section 1557 applies to Defendants because they qualify as "any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance." 42 U.S.C.A. § 18116(a).

92.     Section 1557 provides a private right of action to individuals for violations of Section 1557. See 45 C.F.R. § 92.302(d); see also Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376, 31,439 (May 18, 2016) (clarifies that "a private right of action and damages for violations of Section 1557 are available to the same extent that such enforcement mechanisms are provided for and available under Title VI, Title IX, Section 504, or the Age Act with respect to recipients of Federal financial assistance").

93.     Defendants qualify as a health program or activity pursuant to Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C.A. § 1 81 l6(a).

94.     Defendants receive Federal financial assistance through its participation in the Medicare Part D prescription insurance program, and other Medicare insurance programs.

95.    Defendants violate Section 1557's prohibition against discrimination by subjecting the disabled to inferior treatment than what it provides to the non-disabled.

96.    Plaintiff has suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

97.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

98.    Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

99.    In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

100.    By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

101.    Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

102.    Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the Defendants have aided and abetted others in committing disability discrimination.

103.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

104.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(iv)).

105.    It would be readily achievable to make Defendants' place of public accommodation fully accessible.

106.    It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

107.    As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

108.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

109.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

110.    Plaintiff suffers from various medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102(16)).

111.    The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the NYCHRL.  The Restoration Act confirmed the legislative intent to abolish "parallelism" between the NYCHRL and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 of the NYCHRL (emphasis added). The Restoration Act is to be construed broadly in favor of Plaintiff to the fullest extent possible.  See also New York City Local Law 35 of 2016.

112.    Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative

Code § 8-107(4)).  Each of the Defendants have aided and abetted others in committing disability discrimination.

113.    Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

114.    Defendants have discriminated, and continue to discriminate, against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating and/or maintaining an inaccessible commercial facility/space.

115.    Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

116.    Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107 (4)).

117.    In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to, aid, and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

118.    Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public

sidewalk.  As a result, Flushing Medical Arts Building Inc. continuously controlled, managed, and operated the public sidewalk abutting 43-55 147th Street, which includes the portion of the sidewalk constituting the entrance to Defendants' place of public accommodation.

119.    Flushing Medical Arts Building Inc.'s failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

120.    Defendants discriminated against Plaintiff in violation of the NYCHRL (Administrative Code, § 8-107(4)) by maintaining and/or creating an inaccessible public accommodation.

121.    Defendants' conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

122.    Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on the disabled (including Plaintiff).

123.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law. In particular,

Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

124.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

125.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

126.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

127.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

128.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

129.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

28

## SIXTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

130.    Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

131.    Defendants discriminated against Plaintiff pursuant to New York State Executive Law.

132.    Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

133.    Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

134.    Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation and their operations, policies, practices, and procedures.

135.    Injunctive relief is also necessary to make Defendants' facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

136.    Injunctive relief is further necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, NYSHRL and NYCHRL and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.  Issue a permanent injunction ordering **Defendants to close and cease all business** until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, NYSHRL and NYCHRL, including but not limited to the violations set forth above;

C.  Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.  Award Plaintiff compensatory damages as a result of Defendants' violations of Section 504 of the Rehabilitation Act, NYSHRL and the NYCHRL;

E.  Award Plaintiff punitive damages in order to punish and deter the Defendants for their violations of the NYCHRL;

F.  Award Plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYCHRL;

H.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA, Section 1557 of the Affordable Care Act, and Section 504 of the Rehabilitation Act; and

I.  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: July 5, 2022
New York, New York

Respectfully submitted,

**PARKER HANSKI LLC**

By:____/s_____
Glen H. Parker, Esq.
Attorneys for Plaintiff
40 Worth Street, Suite 602
New York, New York 10013
Telephone: (212) 248-7400 ex. 15
Facsimile: (212) 248-5600
Email:ghp@parkerhanski.com